IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DEVERE COMPANY, INC.,

                Plaintiff,                OPINION AND ORDER

v.

                                                 14-cv-534-wmc

MICHAEL J. McCOLLEY and VER-TECH, INC.,
d/b/a VER-TECH LABORATORIES, INC. and
VER-TECH SOLUTIONS AND SERVICE, INC.,

                Defendant.

---

Over a year after former employee Michael J. McColley went to work for competitor Ver-Tech Solutions and Service, Inc. ("VSS"), plaintiff DeVere Company, Inc. brought suit alleging that: (1) McColley violated noncompete and nondisclosure provisions in his employment agreement; and (2) McColley, VSS and its related companies misappropriated trade secrets in violation of Wis. Stat. § 134.90, tortiously interfered with DeVere's contracts with current and prospective customers, and engaged in a civil conspiracy pursuant to Wis. Stat. § 134.01.  (Compl. (dkt. #1).)  The day after filing its complaint, DeVere also moved for a preliminary injunction, seeking an order enjoining defendants from using DeVere's trade secrets.  (Dkt. #3.)  For the reasons that follow, the court will deny plaintiff's motion for preliminary injunction.

ALLEGATIONS OF FACT

**A.  The Parties**

Plaintiff DeVere Company, Inc., is a Wisconsin Corporation, with its principal place of business in Janesville, Wisconsin.  DeVere is engaged in the business of

manufacturing and selling cleaning and other chemical products to industrial and commercial customers in Wisconsin, Iowa and other parts of the country. DeVere also offers a Commercial Dishwasher Lease Program primarily in Wisconsin, northern Illinois and Iowa. Under this program, DeVere provides service for DeVere-leased and customer-owned commercial dishwashers using DeVere dishwashing products.

Defendant Michael J. McColley is a citizen of Iowa, a former employee of DeVere, and a current employee of co-defendant Ver-Tech Solutions and Service, Inc. ("VSS"). As reflected in the caption, plaintiff names Ver-Tech, Inc. as a defendant, alleging that it does business as Ver-Tech Laboratories, Inc. and Ver-Tech Solutions and Service, Inc. Based on their response to plaintiff's proposed findings of facts, however, the three defendants appear to be legally-distinct, corporate entities with only VSS engaged in the business of selling cleaning products to commercial industries, including cleaning products for commercial dishwasher and laundry machines. (Defs.' Resp. to Pl.'s PFOFs (dkt. #30) ¶ 3; Declaration of Tony Vertin Sr. ("Vertin Decl.") (dkt. #33) ¶ 6; Declaration of Harry Myers ("Myers Decl.") (dkt. #32) ¶ 6.)

As DeVere's competitor and McColley's present employer, VSS would appear to be a proper defendant, while the other two Ver-Tech corporate entities would not.[1] VSS

---

[1] In VSS's opposition to plaintiff's motion, defendant indicated that it will be moving to dismiss Ver-Tech, Inc., and Ver-Tech Laboratories, Inc. (Ver-Tech's Opp'n (dkt. #31) 2 n.1.) Since then, VSS has filed a motion for sanctions pursuant to Federal Rule of Civil Procedure 11 (dkt. #46) and a motion for judgment on the pleadings (dkt. #44), arguing that DeVere has no good faith basis for continuing to maintain a claim against the other corporate defendants. Given defendant's straightforward factual representations, perhaps plaintiff will still stipulate to an amendment of the complaint naming only the correct, sole corporate defendant, which certainly seems appropriate absent some substantial evidence of a blurring of corporate roles or grounds to pierce the corporate veil. If

primarily serves customers in Minnesota, Iowa, Wisconsin, South Dakota and North Dakota. Plaintiff alleges that Ver-Tech, Inc. is incorporated in the State of Minnesota, with its principal place of business in Rockford, Minnesota. According to publically-available information on the Minnesota Secretary of State website, Ver-Tech Laboratories, Inc. and Ver-Tech Solutions and Service, Inc. are also citizens of Minnesota, having been incorporated in that state and with their principal places of business also in Rockford, Minnesota.[2]

### B. McColley's Employment with DeVere

McColley was hired by DeVere on January 4, 2010, as a "Sales and Service Associate" and assigned to work with DeVere's commercial dishwasher customers in Iowa, providing limited equipment service and chemical product sales support for service technicians in Wisconsin. Effective January 1, 2013, McColley was promoted to the position of "Regional Sales Manager" for DeVere's Midwest sales region.

---

DeVere concedes that all three corporate defendants are distinct, but argues they are still properly named parties in suit, then it will also have to properly plead complete diversity. For now, the court will refer to the corporate defendant as "VSS."

[2] *See* Minnesota Business & Lien System, Office of Minnesota Secretary of State, "Ver-Tech Laboratories, Inc." Business Record Details, *available at* http://mblsportal.sos.state.mn.us/Business/SearchDetails?filingGuid=6ccf22b2-9cd4-e011-a886-001ec94ffe7f (last visited Nov. 18, 2014); *id.*, "Ver-Tech Solutions & Service, Inc." Business Record Details, *available at* http://mblsportal.sos.state.mn.us/Business/SearchDetails?filingGuid=8b325604-abd4-e011-a886-001ec94ffe7f (last visited Nov. 18, 2014).

On or about the same time as his promotion, McColley signed an Employment Agreement with DeVere. The Agreement contains two covenants in Section 5 relating to termination of employment that are pertinent to this action:

> (a) <u>Noncompetition.</u> For one (1) year after Employee's termination of employment with Company, Employee will not canvass, service, sell, solicit the sale of, or accept any order on behalf of any "Competitive Business" from a customer of Company with whom Employee did business or attempted to do business or to whom Company provided products or services or contracted to provide products or services at any time during the twelve (12) month period immediately proceeding [*sic*] the termination of employment. "Competitive Business" shall be one that manufactures and/or sells, directly or indirectly, products generally of a type, size and description manufactured or sold by Company or services generally of a type provided by Company.

(Compl., Ex. A (dkt. #1-3) ¶ 5(a).)

> (b) <u>Nondisclosure.</u> Company's Confidential Information has been established at great expense and provides Company with substantial competitive advantage in conducting its business. Therefore, during the term of his employment with Company, and the sooner of (i) such time as the Confidential Information becomes generally available to the public through no fault of Employee, (ii) such time as the Confidential Information no longer provides benefit to Company, or (iii) one (1) year after the termination of his Employment with Company, Employee will not, in any capacity, use or disclose, or cause to be used or disclosed, any Confidential Information acquired by Employee during his relationship with Company.

(*Id.* at ¶ 5(b).)

Section 5(d) further provides that "[t]he parties agree that nothing in this Agreement shall be construed to limit or negate the common law of torts or trade secrets or Wisconsin's Uniform Trade Secrets Act, §134.90, Wis. Stats., which provides

4

Company with broader protection than that provided herein." (*Id.* at ¶ 5(d).) The Agreement defines "Confidential Information" as

> information and trade secrets generally not known to the public and which Company seeks to protect from disclosure to its existing or potential competitors or others including, without limitation, names, addresses and key personnel of customers, potential customers, suppliers, and/or vendors; customer credit, purchasing and service histories; customer correspondence and files; route information; sales and service reports; existing or proposed bids and/or pricing strategies; confidential price lists; business plans and marketing strategies; technical and engineering documents; financial and business projections; negotiation strategies; manuals; production procedures; techniques; samples; product formulae; apparatus and equipment.

(*Id.* at ¶ 4.)[3]

### C. McColley's Purported Access to Trade Secrets

As the Midwest Regional Sales Manager, McColley provided support for the DeVere service technicians, conducted sales calls with DeVere distributors, and attended distributor trade shows. Plaintiff also contends that McColley completed internal sales and marketing reports, which McColley disputes. (Defs.' Resp. to Pl.'s PFOFs (dkt. #30)

---

[3] Defendants do not dispute that the Agreement contains this definition, but contend that parties to an Agreement cannot define between themselves what constitutes a trade secret; rather, the question is one for the court based on public policy concerns about restraints of trade. (Defs.' Resp. to Pl.'s PFOFs (dkt. #30) ¶ 20 (citing *Gary Van Zeeland Talent, Inc. v. Sandas*, 84 Wis. 2d 202, 217-18, 267 N.W.2d 242, 249 (1978) ("Merely stating or having the employee acknowledge that a customer list is secret does not make it a trade secret entitled to be protected by the law in derogation of freedom of commerce and trade.")).) The court need not take up this dispute in light of its determination, described below, that plaintiff has no right to injunctive relief outside of the one-year period defined in the Agreement.

¶ 14.) During McColley's employment with DeVere, DeVere also contends that it provided McColley with proprietary information, including:

- Lists of current and prospective customers in Iowa created and maintained by DeVere, its distributors and its manufacturing representatives, containing descriptions of products customers ordered or intended to order;

- Information on DeVere's gross margin percentages on DeVere product and service sales in Iowa and the Midwest;

- DeVere's strategic and marketing plans for Iowa and the Midwest;

- Product development and R&D information including, but not limited to, test results, new products in testing, internal product performance assessments, product approaches that succeeded or failed, and planned product launches; and

- Sales volume by salesperson, manufacturer's representative and distributor for Iowa and the Midwest region, including monthly reports on sales activities.[4]

McColley disputes much of this as well, averring that the customer lists contained basic contact information and did not provide detailed information about purchases or potential purchases. (Defs.' Resp. to Pl.'s PFOFs (dkt. #30) ¶ 23.)

The redacted example attached to DeVere's CEO Cynthia Shackelford's affidavit appears to support McColley's characterization. (Affidavit of Cynthia Shackelford ("Shackelford Aff."), Ex. 1 (dkt. #9-1).) Furthermore, McColley contends that he was not given access to DeVere's gross margins, any strategic or marketing plans (indeed, he was not aware of DeVere having such plans), or product development and R&D

---

[4] DeVere further contends that it takes appropriate actions to maintain the confidentiality of these trade secrets, including password protecting electronic information, locking cabinets, and requiring employees to sign an employee agreement containing a confidentiality provision that is similar to the provision in the employee handbook.

information. (*Id.*) Finally, while McColley acknowledges receiving some monthly sales information, he contends that those reports pertained only to distributors. (*Id.*)

**D. McColley's Resignation and Employment with Ver-Tech**

On July 5, 2013, McColley resigned his employment with DeVere effective that day. In his resignation letter, McColley stated, "I intend to honor my signed employment agreement. Confidentiality concerning DeVere products and customers. Non compete clause as well." (Compl., Ex. B (dkt. #1-4).)

On or around that same day, McColley accepted employment with VSS, a DeVere competitor. McColley represents that his actual employment began on July 8, 2013. (Declaration of Michael J. McColley ("McColley Decl.") (dkt. #36) ¶ 57.) On July 15, 2013, DeVere's president Cynthia Shackelford wrote to McColley and VSS's president Tony Vertin providing notice that DeVere intended to enforce the Employment Agreement to the fullest extent of the law. The crux of plaintiff's complaint concerns four alleged, subsequent violations of the Agreement, a duty of good faith and fair dealing and/or statutory provisions:

**1. Ames Quality Inn**

In April 2014, more than nine months after McColley's termination of his employment with DeVere, it claims McColley had contact with DeVere's customer, Quality Inn in Ames, Iowa. DeVere maintains that before McColley's contact, the Ames Quality Inn had been a DeVere dishwashing and chemicals customer since 2010, used a DeVere dishwasher chemical dispenser and participated in DeVere's Commercial

7

Dishwasher Lease Program. Nevertheless, on April 14, 2014, McColley called his DeVere replacement, Rich Nehman, telling him that he "got" the dishwasher lease at the Ames Quality Inn. (Pl.'s PFOFs (dkt. #30) ¶ 37 p.16.) Later that day, McColley called Nehman again, stating, "Hey Rick I want to let you know that I am in Minnesota as you know but I tore up the contract[.] I am not going to get the Quality Inn in Ames. So I just give you a heads up. It's all open territory for you my man. [G]o get 'em." (*Id.*) McColley does not dispute that he contacted Nehman either time, but contends that "he did so to explain the circumstances of his interaction with the Ames Quality Inn." (Defs.' Resp. to Pl.'s PFOFs (dkt. #30) ¶ 37, p.18.)

Despite the second message to Nehman, DeVere contends that the Ames Quality Inn replaced the DeVere-compatible dishwasher and detergent dispenser with a dishwasher leased from VSS later that same week. This action was confirmed in a May 7, 2014, e-mail from McColley to DeVere's President Shackelford in which he explained what happened with the Ames Quality Inn, acknowledged that VSS's General Manager did lease a machine, but stated that he would not be involved in the servicing of the machine. (Shackelford Aff., Ex. G (dkt. #9-7); *see also* Affidavit of Ricky Nehman ("Nehman Aff.") (dkt. #12) ¶ 11 (stating that the new machine was installed the week of April 15, 2014).)

Defendants do not dispute that the Ames Quality Inn switched to a VSS machine, but contend, with the support of Joe Jordison, Ames Quality Inn's General Manager, that it was due to dissatisfaction with DeVere and that McColley did not solicit his business. (Affidavit of Joe Jordison ("Jordison Aff.") (dkt. #34) ¶¶ 24, 26.) While the Ames

8

Quality Inn is apparently still using DeVere chemicals in the dishwashing machine, DeVere's last service call at that location was June 9, 2014.[5]

### 2. DeVere's Distributor Farner-Bocken

On June 11, 2014, some eleven months after McColley's resignation, he called James Bocken on behalf of VSS to ask him to add VSS to Farner-Bocken's vendor list for cleaning chemicals. Farner-Bocken, Bolton & Hay and Central Iowa Distributing all receive and fill product orders as DeVere's distributors in Iowa. Later that same day, McColley called Bocken again and told him that he "should influence Farner-Bocken's purchasing department to replace DeVere products with Ver-Tech products or he would go after our customers." (Affidavit of James Bocken ("Bocken Aff.") (dkt. #10) ¶ 8.) McColley does not dispute that he called Bocken, but contends that he never threatened to go after his business. (McColley Decl. (dkt. #36) ¶ 89.)

McColley followed up with a text message later that said, "My Company has agressive [sic] pricing, which will help your Team go after the Competition. My plan would be to grow the business, not just convert DeVere business." (Bocken Aff. (dkt. #10) ¶ 9.) McColley contends that the reference to "aggressive pricing" was a reference to VSS's economy line, and that the pricing structure for that line was in place before McColley began his employment with VSS. (McColley Decl. (dkt. #36) ¶¶ 91-92.)

### 3. DeVere's Distributor Bolton & Hay

---

[5] This is consistent with DeVere's policy not to service a machine leased from another company.

On June 30, 2014, almost twelve months after his resignation, McColley sent a VSS industrial cleaning chemical price flier to another distributor Bolton & Hay. (Affidavit of Tyson Iles ("Iles Aff."), Ex. A (dkt. #11-1).) McColley followed up on July 13, 2014, with an e-mail pitch to replace DeVere dishwashing, laundry and cleaning chemicals with Ver-Tech products. In that e-mail, McColley acknowledged his noncompete agreement, but stated that he was free of that agreement now. (Iles Aff., Ex. B (dkt. #11-2).) McColley does not dispute that he sent a flier on June 30, 2014, contending that it was at the request of Lew Bolton, a Bolton & Hay representative. (McColley Aff. (dkt. #36) ¶ 100.)

### 4. Des Moines Quality Inn

On July 29, 2014, more than one year after resigning from DeVere, McColley visited the Des Moines Quality Inn while Nehman was performing a service call.[6] McColley informed Nehman that VSS was going to replace (1) the DeVere laundry dispensers on July 30, 2014, and (2) the DeVere dishwasher as soon as the DeVere detergent products were depleted. On July 30, 2014, the laundry dispenser was replaced with a VSS product, and VSS dishwashing chemicals were already on site. Based on this, DeVere claimed that at the time of plaintiff's filing of its motion for preliminary injunction, its laundry account with the Des Moines Quality Inn had been terminated and its dishwasher account would be terminated in the near future.

---

[6] The Des Moines Quality Inn is under common ownership with the Ames Quality Inn. (Affidavit of JP Mansfield ("Mansfield Aff.") (dkt. #35) ¶ 5.)

OPINION

Plaintiff contends that McColley and VSS are using DeVere distributor pricing and marking information, customers lists and other trade secrets acquired during McColley's employment with DeVere to engage in "the Ver-Tech 'aggressive pricing' program and the dishwasher equipment interference."  (Pl.'s PFOFs (dkt. #8) ¶ 39.) Plaintiff further contends that "[d]efendants' objective is to use DeVere's proprietary information deliberately to terminate DeVere's relationship with its distributors and individual customers in Iowa and to replace DeVere with Ver-Tech." (*Id.*)  Defendants' dispute this characterization, arguing in opposition that they are not using DeVere's trade secrets (assuming these materials constitute trade secrets); that the reference to "aggressive pricing" is part of a program developed before McColley even began working for VSS and is entirely unrelated to his employment; and that McColley did not attempt to solicit sales from the Ames Quality Inn.  (Defs.' Resp. to Pl.'s PFOFs (dkt. #30) ¶ 39.)

While DeVere has certainly alleged enough to claim damages under its Agreement and Wis. Stat. § 134.90, and perhaps common law, DeVere has not come forward with evidence supporting injunctive relief beyond the one year after McColley's formal resignation and employment by VSS.

**I.  Jurisdiction**

As described in the facts above, there is complete diversity between plaintiff and the apparent, actual defendants McColley and VSS:  plaintiff is a citizen of Wisconsin; McColley is a citizen of Iowa; and VSS is a citizen of Minnesota.  The complaint, however, contains limited allegations indicating that the amount in controversy exceeds

11

$75,000. Moreover, in response to plaintiff's findings of fact, defendants challenged whether plaintiff's claims meet the jurisdictional amount. (Defs.' Resp. to Pl.'s PFOFs (dkt. #30) ¶ 4.) VSS also denied in its answer that the court had jurisdiction over this matter. (VSS's Answ. (dkt. #17) ¶ 6.) Based on this, the court required plaintiff to submit proof that the amount in controversy exceeds $75,000. (9/17/14 Order (dkt. #38) 3.)

"[T]he standard for determining the amount in controversy requirement 'was established by the Supreme Court in *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283 (1938). Unless recovery of an amount exceeding the jurisdictional minimum is legally impossible, the case belongs in federal court.'" *Grinnell Mut. Reinsurance Co. v. Haight*, 697 F.3d 582, 585 (7th Cir. 2012) (quoting *Back Doctors Ltd. v. Metro. Prop. & Cas. Ins. Co.*, 637 F.3d 827, 830 (7th Cir. 2011)) (citing *St. Paul Mercury*, 303 U.S. at 293). On the other hand, the party seeking to invoke this court's jurisdiction has the burden of establishing it. *See Smart v. Local 702 Int'l Bhd. of Elec. Workers*, 562 F.3d 798, 802-03 (7th Cir. 2009).

Plaintiff contends that the amount in controversy is met because it seeks compensatory damages exceeding $80,000, punitive damages of roughly $40,000 (or at least that is a reasonable estimate), and pre-filing attorney's fees of about $16,000. (Pl.'s Juris. Br. (dkt. #39) 7.) In addition, plaintiff also seeks injunctive relief, which it claims could be valued in excess of $1 million. (*Id.* at 8.)

While the court is skeptical of many of the damages plaintiff claims -- largely because of its rejection of plaintiff's theory that it has a right to hold defendants

12

accountable for alleged breaches of the Employment Agreement and/or use of trade secrets beyond one year -- the court finds that the jurisdictional amount is met (if just barely) by damages from: (1) the claimed lost lease associated with the Ames Quality Inn dishwasher and related chemical sales ($32,000); (2) the possibility of punitive damages as a result of that lost lease and sales; and (3) the possible award of contractual and/or statutory attorney's fees. *See Keeling v. Esurance Ins. Co.*, 660 F.3d 273, 274-75 (7th Cir. 2011) (considering punitive damages that might be legally awarded in determining whether jurisdictional amount was met); Wis. Stat. § 134.90(4)(b) ("If a [misappropriation of a trade secret] is willful and malicious, the court may award punitive damages in an amount not exceeding twice any award [of monetary damages]."); *Gardynski-Leschuck v. Ford Motor Co.*, 142 F.3d 955, 958 (7th Cir. 1998) ("Legal fees may count toward the amount in controversy when the prevailing party is entitled to recover them as part of damages."); Compl. Ex. A (dkt. #1-3) ¶ 7 ("If legal action is brought to enforce or interpret this Agreement, the prevailing party will be entitled to recover its actual attorneys' fees and legal costs in connection therewith."); Wis. Stat. § 134.90(4)(c) (if a misappropriation of a trade secret "is willful and deliberate, the court may award reasonable attorney fees").

Accordingly, this dispute is properly before the court under its diversity jurisdiction, 28 U.S.C. § 1332(a).

## II. Motion for Preliminary Injunction

As the party seeking injunctive relief, DeVere "must show that it is reasonably likely to succeed on the merits, it is suffering irreparable harm that outweighs any harm the nonmoving party will suffer if the injunction is granted, there is no adequate remedy at law, and an injunction would not harm the public interest." *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006). While plaintiff asserts several contractual and statutory claims in its complaint, plaintiff's motion for preliminary injunction is limited to "the merits of Count 5" that defendants have violated the Uniform Trade Secrets Act, which Wisconsin has adopted and codified at Wis. Stat. § 134.90. (Pl.'s Reply (dkt. #42) 2.)[7] To prove that it is reasonably likely to succeed on the merits of that claim, DeVere must, therefore, demonstrate that it has a right to injunctive relief under that statute.

Section 134.90 provides in pertinent part:

> **(2) Misappropriation.** No person, including the state, may misappropriate or threaten to misappropriate a trade secret by doing any of the following:
>
> (a) Acquiring the trade secret of another by means which the person knows or has reason to know constitute improper means.
>
> (b) Disclosing or using without express or implied consent a trade secret of another if the person did any of the following:
>
> 1. Used improper means to acquire knowledge of the trade secret.

---

[7] The Employment Agreement also contemplates the possible entry of an injunction, but plaintiff does not seek preliminary relief based on contract law.

>2. At the time of disclosure or use, knew or had reason to know that he or she obtained knowledge of the trade secret through any of the following means:
>
>a. Deriving it from or through a person who utilized improper means to acquire it.
>
>b. Acquiring it under circumstances giving rise to a duty to maintain its secrecy or limit its use.
>
>c. Deriving it from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use.
>
>d. Acquiring it by accident or mistake.

Putting aside the issue of whether they constitute "trade secrets," there is no dispute that McColley acquired knowledge of DeVere's customer lists, marketing material and pricing information by proper means during the course of his employment. As such, McColley and VSS could "misappropriate" these trade secrets as defined by § 134.90 *only* if McColley had a "duty to maintain [their] secrecy."

Here, plaintiff's motion was filed *after* the one-year period identified in the Employment Agreement with respect to both the noncompete and nondisclosure covenants. Absent an independent common law or statutory obligation to maintain the confidentiality of these presumed trade secrets beyond one year, plaintiff would appear to have no basis to seek injunctive relief. With this concern in mind, the court required plaintiff to submit a reply brief explaining the factual and legal grounds that would justify the court's entry of an injunction in light of the lapse of that period. (9/17/14 Order (dkt. #38) 3.) In its reply, plaintiff contends that its claim under Wis. Stat. § 134.90 operates independently from its claim that McColley violated the nondisclosure provision

of the Employment Agreement: "DeVere's rights under Section 134.90 are actionable both because the parties agree that those rights would be independent of the Employment Agreement and because the statute itself does not constrain DeVere's rights with a time limit." (Pl.'s Reply (dkt. #42) 3.)

This argument fails for at least two reasons. *First*, the Employment Agreement provides the basis for McColley's "duty" to maintain the confidentiality of any trade secrets, and that duty is limited to a one-year period. Plaintiff fails to point to any other source of duty requiring McColley to maintain the confidentiality of these trade secrets. Accordingly, plaintiff's claims under § 134.90 are similarly limited to a one-year period, post McColley's termination of employment.

The fact that the Agreement provides "the parties agree that nothing in this Agreement shall be construed to limit or negate the common law of torts or trade secrets or Wisconsin's Uniform Trade Secrets Act, § 134.90," does not change this conclusion. While the Agreement is not limiting or negating plaintiff's rights under § 134.90, neither is it expanding them. That statutory provision requires a duty to maintain the confidentiality and the Agreement simply acts as the source of that duty.

*Second*, while plaintiff certainly has access to the remedies available under that Act, which might be distinct, or at least independent, from those available under its breach of contract claim, even if § 134.90 imposed some independent duty on McColley to maintain trade secrets beyond the one-year, contractual period, plaintiff has not demonstrated any likelihood of succeeding on a claim for injunctive relief at this late date. In support of its argument, plaintiff primarily relies on *La Calhene, Inc. v. Spolyar*,

16

938 F. Supp. 523 (W.D. Wis. 1996). While the court granted plaintiff's motion for preliminary injunction in that case, it limited the injunction to one year from the former employee's date of resignation. *Id.* at 531-32 ("I am convinced that no injunction against the disclosure of trade secrets should last more than one year from the date of defendant's resignation[.]"). In that case, unlike here, the plaintiff sought an injunction on the heels of the defendant's termination of employment, well within the one year period.

The reason for a time limit makes sense. "After one year, the information that defendant acquired while employed by plaintiff will have lost a good part of its economic value to plaintiff or to plaintiff's competitors." *See id.* at 532. So, too, here. To the extent that the information plaintiff seeks to protect constitutes trade secrets, such information is only valuable for a limited period of time: strategy and marketing plans grow stale; pricing changes; and customer demands shift.[8] Stated another way, even if McColley had a duty to not disclose trade secrets independent of his Employment Agreement, any such obligation would have lapsed by the time plaintiff sought injunctive relief. Indeed, whatever value marketing materials, pricing information and even customer lists may have had in the nearer term, it is hard to imagine a scenario where

---

[8] Perhaps a secret recipe might stand the test of time and warrant protection beyond a one-year period, but the information plaintiff claims as trade secrets is, by its nature, fleeting. *Compare La Calhene*, 938 F. Supp. at 532, *with Joint Stock Soc. v. UDV North America, Inc.*, 104 F. Supp. 2d 390, 409 (D. Del. 2000) (concluding that old vodka recipes still provided a source of potential value).

17

they would not have become common knowledge to active competitors in the market after a full year.[9]

In denying plaintiff's motion, the court rests its opinion on plaintiff's failure to demonstrate a likelihood of success on its claim for injunctive relief extending beyond the one year after McColley left his employment with DeVere.  The court need not touch on the merits of plaintiff's other claims concerning the Employment Agreement -- whether and how McColley allegedly breached it, whether it is valid, whether the breach resulted in an injury, etc.  Nor must the court consider the merits of plaintiff's tortious interference claims or plaintiff's claim for damages under Wis. Stat. § 134.90, most notably whether the information at issue actually constitutes trade secrets.  The various issues raised by the parties with respect to these claims will await another day.

While I, as the presiding judge, do not involve myself in settlement discussions, I would be remiss not to say that this case presents a possible opportunity for early settlement discussions.  Our Clerk of Court and part-time Magistrate Peter Oppeneer is available for mediation if the parties so wish.

---

[9] Perhaps the market for commercial dishwasher detergent and machine maintenance is different, however unlikely that would appear on its face, but DeVere has offered no evidence in support of its motion for preliminary injunction.

ORDER

IT IS ORDERED that plaintiff DeVere Company, Inc.'s motion for preliminary injunction (dkt. #3) is DENIED.

Entered this 18th day of November, 2014.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge